ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY
*v.* STARBIRD, ADMINISTRATOR.

Opinion delivered May 17, 1915.

1.  CARRIERS—DAMAGE TO FREIGHT—NOTICE.—Plaintiff was consignee of perishable fruit, and defendant was delivering carrier. The bill of lading provided that notice of damage to the shipment must be made within a certain time. *Held*, under the facts that no proper notice was given as to the damage to part of the shipment, but that the carrier through its agents received such notice of damage to the remaining part of the shipment, as to render it liable within the meaning of the bill of lading.

2.  CARRIERS—DAMAGE TO FREIGHT—NOTICE.—Where it is shown that a delivering carrier has actual knowledge of all the conditions that a written notice could give it, then a written notice is not required.

3.  CARRIERS—DAMAGE TO FREIGHT—NOTICE TO AGENT.—Where a bill of lading required written notice of a claim for damage to freight to be given within a certain specified time, the notice must be given to the company in writing, or personal notice must be

given to that employee or agent of the company whose duty it would be, if written notice had been received, to make the inspection to ascertain the nature and extent of the damage, if such employee or agent does not already possess that knowledge.

Appeal from Crawford Circuit Court; *Jeptha H. Evans*, Judge; reversed in part, affirmed in part.

*Thos. B. Pryor*, for appellant.

1.   No notice was given as required by the bill of lading.   The provision was reasonable.   105 Ark. 406; 90 *Id.* 314; 82 Ark. 353; 107 *Id.* 48; 108 *Id.* 115; 100 *Id.* 37; 93 *Id.* 430.   The court should have found for defendant.

*Robert A. Rowe* and *P. E. Rowe*, for appellee.

1.   The delivering carrier inspected, knew and saw the damaged condition of every car.   Notice was unnecessary, as the carrier had knowledge.   101 Ark. 172; 105 *Id.* 332, 412; Hutch. on Car. (3 ed.), § 442; 90 Ark. 308; 63 *Id.* 332; 89 *Id.* 404; 101 *Id.* 436, 172; 80 *Id.* 554.   These decisions settle the law of this case.

2.   The finding of the court on questions of fact is as conclusive as the verdict of the jury.   90 Ark. 512; 104 *Id.* 154; 84 *Id.* 359; 60 *Id.* 250; 40 *Id.* 144; 36 *Id.* 250.

Smith, J.   The suits embraced in this appeal were originally begun on the 7th of April, 1908, and those causes were removed to the Federal Court, Western District, of this State, where nonsuits were taken in July, 1910.   And thereafter the suits were again brought in the Greenwood District of the Sebastian Circuit Court.   Ten carloads of peaches are involved in this litigation, and there were originally ten suits, but the causes were consolidated and tried together, and a single appeal has brought the judgment in all of the cases before us for review.

The peaches were shipped from Greenwood, in Sebastian County, to Adam Miller in New York City, and suit was brought by Miller to recover damages to compensate the loss sustained to the peaches in transit.   Miller died before final judgment, and the cause was revived in the name of a special administrator.

There was proof to support the finding by the court below that the damage to the peaches resulted from the failure of the railroad to ship the peaches promptly and to ice them properly, and the evidence was also sufficient to sustain the amount of damages found by the court in the case of each of the cars.

The bills of lading for the respective cars all contained the provision that the carrier should not be liable for any damages sustained by the peaches, unless written notice was given within thirty-six hours after the arrival of the peaches at their destination of the damages sustained. It was alleged in the complaint that a written notice had been given; but the proof is insufficient to sustain that allegation. It is very earnestly urged, however, that personal notice was given and that the delivering carrier had such actual knowledge of the damage done the peaches as that a written notice was unnecessary, and would only have advised the delivering carrier of a fact about which it already had full information. The proof on the part of appellee was to the effect that the cars were delivered at the railroad terminal in Jersey City, after which they were switched from the road to a lighter, which was ferried across the Hudson River to a pier numbered 29, which was devoted to the reception of perishable fruits. The cars were taken from the lighter to the dock, which was entirely closed, and no one was allowed inside the dock until the cars had been unloaded and the fruit placed in piles, the crates of peaches in each car being placed in a separate pile. The cars were unloaded by employees of the railroad company, and at midnight bulletins were posted up showing the car numbers and the dealers to whom the fruit was consigned, and at 1 o'clock in the morning the dock doors were opened and the dealers permitted to go in and get their peaches. But no one was permitted in the dock until the peaches were ready for delivery, and no consignee would know whether the cars consigned to him had been received until midnight when the bulletins were posted. The custom was that, if the peaches were sound, they were sold at the dock and

were usually gotten rid of before noon of the day of their receipt; but, if many of them were bad, and had to be sorted out, the authorities at the dock required the consignees to haul the peaches to their places of business and there sort them out, at which time the sound fruit would be repacked in crates and the faulty fruit thrown away.

It is insisted on behalf of appellees that the delivering carrier was necessarily charged with notice of the condition of the fruit at the time of its arrival at its destination; that this is so because the delivering carrier had inspectors at the docks whose business it was to inspect and ascertain the condition of the various shipments, and that the consignments here involved were in such bad shape that the carrier must necessarily have known that considerable damage had been sustained, as the fruit was shipped in crates which were open so that from a superficial examination it could be seen that the fruit had discolored and had become specked and that large quantities of juice from the fruit had run out of the crates over other crates, and that these crates could not have been handled without the railroad company acquiring this knowledge.

The deposition of Adam Miller was taken upon interrogatories in each of these cases, and in five of those depositions he was asked this question: "Interrogatory No. 17. State whether you, or any of your employees, told any of the employees of the delivering carrier of the damaged condition of peaches in said car, and whether or not employees of said railroad company went into the car and inspected the peaches, and, if they did not go into the car, did they unload or see the peaches unloaded, or see them after they were unloaded, and knew of the damaged condition of the peaches, giving name of the employee, if you know, and the position he holds with the company?

"His answer was, 'I don't know.'"

The following question was also asked: "Interrogatory No. 18. State if you know whether the railroad company, at that end of the line, had an employee to inspect said car of peaches, and knew of the condition in which the car arrived?

"Answer to Interrogatory No. 18, 'I don't know.' "

(1-2)  These questions were asked and answers given in regard to the following cars involved in this litigation, towit:   A. R. T. 8787; A. R. T. 9737; A. R. T. 10756; A. R. T. 9478; A. R. T. 8711.

But different answers were given in regard to the remaining five cars, which had the same initials and were numbered as follows:   10640; 8683; 10875; 10542; 10052. As to these last-numbered cars, the witness answered the Interrogatory No. 17 as follows:  "I called the attention of the dock foreman to the bad peaches, and told him they were not iced and had gone bad.  I do not know the dock foreman's name.  He is in the employ of the Pennsylvania Railroad, which owns the dock where the peaches were unloaded from the car which was lightered from Jersey City to New York.  I don't know his name.  He looked at them and went away."  And, in response to Interrogatory No. 18, he testified:  "The railroad company has a man at the dock who inspects the peaches as they come on the dock off the cars and see the condition which they arrive in."

We have today handed down an opinion in a companion case.  See *St. Louis, I. M. & S. Ry. Co.* v. *Cumbie et al.*, 118 Ark. 478.  In that case we reviewed our previous decisions on the question of the validity of the stipulation contained in the bill of lading requiring notice to be given of the damaged condition of the goods within thirty-six hours after arrival at their destination.  The validity of the stipulation was again upheld in that case, as it had been in several prior decisions, and the judgment recovered in that case was reversed because the proof did not show a compliance with this condition.  That case also stated the rule as to the circumstances and conditions under which the knowledge of the carrier in regard to the condition of the damaged goods would be held to dispense with the necessity of giving notice.  That opinion quoted with approval from the case of *Cumbie* v. *St. Louis, I. M. & S. Ry. Co.*, 105 Ark. 406, the following language:

"Where the facts stated show that the delivering carrier has actual knowledge of all the conditions that a written notice could give it, then written notice is not required, and a provision requiring it under such circumstances would be unreasonable."

The purpose of this notice is manifest, and has been stated in our decisions upholding it. Its object is that the carrier may inspect the goods and ascertain the nature and extent of the damage while the truth in regard to any claim for damages may be known. But where the carrier possesses this information independently of the notice, the giving of the notice can serve no necessary purpose.

(3) It is insisted that the carrier should be charged with notice of any information possessed by any of its servants or employees. But we can not agree with this contention. None of our cases so hold, nor has it been so held in the decisions of any other jurisdiction of which we are aware. To so hold would render the provision in regard to notice practically nugatory. In the present case the laborers who unloaded the cars were called longshoremen, and some of these men unquestionably knew that some of the peaches contained in the cars were in a damaged condition; but this is not the knowledge contemplated by the bill of lading. To comply with the terms of the bill of lading it is essential, either that the notice be given to the company in writing, or, if this is not done, that personal notice be given to that employee or agent of the company whose duty it would be, if written notice had been received, to make the inspection to ascertain the nature and extent of the damage, if such employee or agent does not already possess this knowledge. These longshoremen were under no duty to inspect the peaches. They had no duty to perform except that of taking the crates of peaches out of the cars and piling them on the dock, and they would not know whether written notice had been given to the company or not, and there is nothing in the record to indicate that any duty of inspection would have devolved upon them had the written notice in fact been given. There is much evidence in this record tend-

ing, on the one hand, to corroborate Mr. Miller, and, on the other hand, to contradict him. But we are not called upon to weigh this evidence, nor to pass upon the credibility of the witnesses. It is our duty simply to determine whether or not the evidence is legally sufficient to sustain the verdict. We will not undertake to review the evidence in detail, but state our conclusion to be that, as to the five cars first mentioned, there was no proof of knowledge of the damage sufficient to supply the failure to give the notice in writing provided for by the bill of lading, and as to these cars the judgment must be reversed, and as the case has been fully developed the suits as to them will be dismissed. But we think a different rule must be applied to the last five mentioned cars. As to them the proof showed that the peaches were placed in piles as they were unloaded from the cars, and that neither the consignee nor his representative was allowed in the dock until the cars had been completely unloaded, and that Miller went to the foreman of the dock, who was the man in authority there, and reported to him the damaged condition of the peaches, and that the foreman went with Miller to these peaches and saw the peaches, but left without making any comment, and that this foreman was the representative of the delivering carrier. The proof further shows that an inspection of the peaches by the railroad company could have been made then and there. The answer to the eighteenth interrogatory shows that the railroad company maintained an inspector at the dock. Yet, notwithstanding this fact, we do not hold the railroad company liable for the first five mentioned cars, because the proof does not show that this inspector had any duty to perform concerning them. Upon the other hand, we can not assume that there was any uncertainty about Miller's purpose in hunting up the dock foreman and reporting to him the condition of the five remaining cars, and in going with this foreman to the piles of peaches about which the complaint was being made. The proof does not show that Miller stated to the dock foreman that it was his intention to sue for the damage to the peaches; but it is not indispensable that

the written notice should have contained this statement. The purpose and effect of Miller's statement to the foreman was to advise the representative of the delivering carrier, in authority of the fact that damage had been done, and the giving of this notice under the circumstances must be held sufficient to charge the delivering carrier with knowledge of the fact that compensation would be claimed.

The depositions of Miller, upon motion of appellant, had been suppressed at a former term of court for the reason, principally, that the certificate of the notary was defective. This certificate was amended, and upon motion of appellee the court set aside its former order suppressing the depositions and permitted them to be read upon the hearing of the cause. There was no intimation that the integrity of the depositions had not been preserved, neither was there any question about the depositions having been properly transmitted by the clerk. No prejudicial error was committed in this respect.

As to the five cars last mentioned, the judgment will be affirmed; but as to the others, the judgment is reversed and the cause dismissed.